(No. 97741.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FLOYD DURR, Appellant.

*Opinion filed May 19, 2005.*

Michael J. Pelletier, Deputy Defender, and Steven W. Becker, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee Goldfarb, Annette Collins, Susan Schierl Sullivan, Veronica Calderon Malavia and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE KARMEIER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Floyd Durr, was convicted of three counts of predatory criminal sexual assault and one count of aggravated kidnapping. Defendant was sentenced to 20-year terms of imprisonment on the former convictions and a 15-year term of imprisonment on the latter. All sentences were ordered to be served consecutively.

On appeal, defendant argued, *inter alia*, that the trial court had erred in giving a nonpattern jury instruction that "effectively denied the jury the option of fully acquitting him" of all charges. The appellate court agreed with defendant. The appellate court observed that defendant had not preserved the error for review, but invoked the second prong of our plain error rule, reversing and remanding for a new trial in order to "preserve the integrity of the judicial process." *People v. Durr*, No. 1—01—1711 (2003) (unpublished order under Supreme Court Rule 23) (*Durr I*). This court denied the State's ensuing petition for leave to appeal, but issued a supervisory order directing the appellate court to vacate its judgment and reconsider in light of *People v. Crespo*, 203 Ill. 2d 335 (2001), and *People v. Thurow*, 203 Ill. 2d 352 (2003). See *People v. Durr*, 205 Ill. 2d 603 (2003) (supervisory order).

In compliance with this court's directive, the appellate court reconsidered the instructional issue with references to *Crespo* and *Thurow*, and concluded "that the giving of the altered instruction by the trial court was not error and that defendant was not deprived of a fair trial." The appellate court went on to consider issues not previously addressed, holding that allegedly improper prosecutorial comments did not deny defendant a fair trial, and vacating one of defendant's predatory criminal sexual assault convictions as a lesser-included offense of

aggravated kidnapping. *People v. Durr*, No. 1—01—1711 (unpublished order under Supreme Court Rule 23) (*Durr II*).

We allowed the defendant's petition for leave to appeal. 177 Ill. 2d R. 315. On appeal, defendant argues that the appellate court "erred in applying the federal plain-error test to [his] case." He states that "the instructional errors raised [in this appeal] are subject to review under Illinois' long-standing plain-error test, which is set forth in Rule 615(a)." He suggests that application of *our* plain-error rule would alter the outcome on appeal. We affirm the judgment of the appellate court.

## BACKGROUND

Defendant was tried before a jury on May 9 through 11, 2000. The relevant facts from that proceeding follow.

M.L. testified that on January 14, 1998, she was 10 years old. At approximately 7 p.m., her mother gave her a dollar with which to purchase candy at a store across the street from her home. When she arrived at the store, she discovered that it was closed, so she walked back to her home. When she reached her front door, a man whom she had never seen before grabbed her by the right shoulder and placed a gun to her side. He ordered her to be quiet and to walk with him or he would kill her. M.L. was able to make a positive in-court identification of defendant because, at the time of the abduction, she looked directly into his face.

M.L. and defendant began walking toward an abandoned building a block away. As they were walking, defendant held the gun to her side and asked her if she had any money. She lied to him and said that she did not, but he reached into her pocket and removed the dollar bill which her mother had given her. M.L. told defendant that her mother would be worried about her if she did not return home soon and would come looking for her, but defendant told her to be quiet.

When they arrived at the abandoned building, defendant took M.L. to the rear of the building and ordered her to remove her clothes. M.L. complied. Defendant unbuckled his overalls and dropped them to his knees. He ordered M.L. to get down on her knees and he placed his penis into her mouth. Defendant forced her to engage in oral copulation with him for approximately five minutes, during which time he held a gun to her head. He eventually ejaculated into her mouth, and when she jerked her head away, he struck her in the face with the gun.

After that act was completed, defendant ordered M.L. to stand up, and at that time he penetrated her vaginally with his finger for approximately three minutes. M.L. testified that she experienced a great deal of pain, though, according to her testimony, defendant's finger penetrated her only "a little bit." M.L. testified that she was crying during the entire time.

Defendant eventually ordered M.L. to lie down. He then got on top of her and placed his penis into her vagina, which, according to her testimony, again caused her a great deal of pain. She testified that defendant's penis penetrated her "a little bit" for approximately 10 minutes. During this part of the assault, M.L. was still crying, and defendant told her to be quiet or he would "blow [her] brains out." While defendant had his penis in M.L.'s vagina, he stuck the gun into her mouth.

After defendant was finished, he stood up, pulled up his overalls, and ordered M.L. to get dressed. While M.L. got dressed, defendant held the gun to his side. He asked M.L. if she had ever had sex before, and she responded she had not. Defendant also asked her how old she was and where she lived. He told her to wait 10 minutes before leaving the building, and defendant then left the premises. M.L. left the building early, and, when she walked outside, she saw defendant standing across the

street. She pleaded with defendant not to shoot her and immediately reentered the building and waited approximately five minutes before leaving. She then ran home and told her mother what had happened. M.L. was later transported to the hospital, where she was treated and examined by a doctor and a nurse. Medical personnel took oral and vaginal swabs, drew blood, and confiscated her underwear. M.L. spoke with a police officer and gave him a physical description of her attacker. She described her assailant's height and weight, and said he was wearing "black lugg boots," blue overalls, a white shirt, a white sweater, and a black "fuzz down coat." She estimated that he was in his late twenties.

Detective Robert Lenihan of the Chicago police department testified that he was present on August 29, 1998, when M.L. picked defendant out of a lineup. Five men participated in the lineup. M.L. was on the other side of a one-way mirror when she viewed the lineup. The participants were told to walk up to the mirror one at a time and turn left and then right. When the first two men stepped up to the mirror, M.L. stated that neither one of them was the man who had assaulted her. However, when the third man walked up to the mirror, M.L. remained silent. When Detective Lenihan asked her why she did not say anything about "Number Three," M.L. cowered behind her mother and said, "That is because it's him."

After defendant was arrested, he signed a consent form to give blood. The sample subsequently taken was later used in a DNA comparison. Greg Didomenic, a forensic scientist for the Forensic Science Center of Chicago, testified that he conducted the DNA analysis in this case. Didomenic concluded that semen stains on M.L.'s panties had a DNA profile matching that of the defendant.

Defendant did not testify or present witnesses.

At the instructions conference, the trial court ruled, with respect to two of the counts charging predatory criminal sexual assault of a child, that defendant was entitled to lesser-included offense instructions on attempted predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Accordingly, during the instructions conference, defense counsel tendered a proposed instruction which, all parties acknowledge, tracked Illinois Pattern Jury Instruction, Criminal, No. 2.01R (4th ed. 2000) (hereinafter IPI Criminal 4th). The tendered instruction, however, does not appear in the common law record. The trial court, reading from the instruction, stated as follows:

"[D]efendant is charged with the offense of predatory criminal sexual assault of a child (Floyd Durr's hand to [M.L.'s] vagina and Floyd Durr's penis to [M.L.'s] vagina). Defendant has pleaded not guilty.

Under the law, a person charged with predatory sexual assault of a child could be found, one[,] not guilty of predatory sexual assault of a child, and not guilty of attempt predatory sexual assault of a child, and not guilty of aggravated criminal sexual abuse, or guilty of predatory criminal sexual—guilty of predatory sexual assault of a child or guilty of attempt predatory sexual assault of a child or guilty of aggravated criminal sexual abuse."

The State objected to the tendered instruction. The prosecutor stated: "I think this is unduly complicated and presents the law to the jury unfavorably. There is just one not guilty."

The trial court agreed the tendered instruction was unduly confusing, stating:

"It should read the defendant is charged with the offense of predatory sexual assault to a child, hand to vagina, penis to vagina. Defendant has pleaded not guilty. Under the law a person charged with predatory sexual assault of a child, hand to vagina, penis to vagina, may be found, one, not guilty, or two, guilty of predatory criminal sexual assault of a child, or guilty of attempt predatory sexual as-

sault of a child or guilty of aggravated criminal sexual abuse."

The State agreed the instruction should so read. The court continued:

"And then eventually [the jurors] will get the concluding instruction which will tell them regarding two counts of predatory sexual assault involving the hand to the vagina and penis to vagina, that they would get four forms of verdict as to each alternative theory. In essence, they should sign one, either not guilty, guilty of predatory sexual assault of a child[,] penis to vagina, hand to vagina, whatever, guilty of aggravated criminal sexual abuse, and, or guilty of an attempt predatory sexual assault of a child."

The court noted that the jurors had "four possibilities, attempt predatory criminal sexual assault, aggravated criminal sexual abuse, guilty as charged initially or not guilty of anything. And that's the four choices they get for each of the two charges of predatory sexual assault of a child involving hand to vagina contact and penis to vagina contact."

When defense counsel expressed concern that the "not guilty" verdict form would read "not guilty of predatory criminal sexual assault," the trial court assured him, "It will just say not guilty. They have got four verdict forms, they will be told *** to sign only one of those four verdict forms as to each of the two alternative theories, hand to vagina and penis to vagina contact." The court later reiterated, "There will just be one verdict form that will say not guilty in relation to those two separate counts, not guilty of anything ***. That's it, or guilty of one [of] three alternatives ***."

Later during the instructions conference, when the matter of verdict forms was specifically addressed, the court directed defense counsel "to make a verdict form which reads in essence not guilty of predatory criminal sexual assault of a child, attempt predatory criminal sexual assault of a child and aggravated criminal sexual abuse, one verdict form that says not guilty of all three

of those things." The State suggested that the instruction should "say not guilty and then that specific act, not guilty, fingers to vagina, that's all it will say." The court agreed:

"Right. And the other three will be the alternatives, guilty of predatory sexual assault[,] penis to vagina, guilty aggravated criminal sexual abuse, same conduct, and guilty of attempt is based on the same conduct. Four verdict forms. One will say not guilty of any of that kind of conduct ***."

Still later, the trial court reiterated, "There is one verdict form which says not guilty regarding that kind of conduct and three alternative forms of guilty referring to conduct of the different charges, predatory criminal sexual assault, aggravated criminal sexual abuse or attempt." At the conclusion of the instructions conference, the trial court again verified, with respect to the predatory criminal sexual assault charges (finger to vagina, and penis to vagina), there would "be *** plain outright not guilty" verdict forms.

After closing arguments, the trial court instructed the jury in the applicable law. The court informed the jury:

"Under the law, a person charged with predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina, and Floyd Durr's penis to [M.L.'s] vagina), may be found not guilty, or two, guilty of predatory criminal sexual assault of a child, or three, guilty of attempt predatory criminal sexual assault of a child, or four, guilty of aggravated criminal sexual abuse."

The court defined the offenses the jury would consider. After specifying the propositions for each lesser-included offense, the court concluded: "If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence any one of

these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The trial court advised the jury:

> "Accordingly, you are provided with four verdict forms pertaining to the charge of predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), not guilty, guilty of predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), and guilty of attempt predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), and guilty of aggravated criminal sexual abuse, (Floyd Durr's fingers to [M.L.'s] vagina).
>
> From these four verdict forms, you should select the one verdict form that reflects your verdict and sign it as I have instructed. Do not write at all on the other three verdict forms. Sign only one of these verdict forms."

The court gave an identical instruction with respect to the predatory criminal sexual assault charge based on the allegation of penis-to-vagina contact. The trial court instructed the jurors that they should sign only the guilty verdict for predatory criminal sexual assault if they found defendant guilty of that offense; they should not sign guilty verdicts pertaining to the lesser-included offenses.

Finally, the court read from the verdict forms it was providing to the jury. With respect to the not-guilty verdict form pertaining to finger-to-vagina contact, the court recited the language of the given verdict form as follows:

> "Regarding the allegations concerning the fingers to vagina contact. 'We, the jury, find the defendant, Floyd Durr, not guilty, (Floyd Durr's fingers to [M.L.'s] vagina.)' There is a line for the foreperson's signature, 11 lines remaining for the 11 jurors."

With respect to the not-guilty verdict form pertaining to penis-to-vagina contact, the court recited the language of the given verdict form as follows:

> " 'We, the jury, find the defendant, Floyd Durr, not guilty, (Floyd Durr's penis, [M.L.'s] vagina).' "

The common law record contains written verdict

forms mirroring those read to the jury by the trial court, and alternate written versions, using the language "not guilty of predatory criminal sexual assault of a child." The latter versions are marked, "given, no objection."

Ultimately, as to each type of conduct alleged (fingers to vagina, and penis to vagina), the jury returned verdicts of guilty of predatory criminal sexual assault of a child. Defendant failed to include an instructional issue in his posttrial motion.

In *Durr I*, the appellate court held that the instructions given the jury denied the jury "the opportunity to acquit defendant of the lesser-included offenses." In so holding, the appellate court rejected the State's contention that the trial court had given the jury "a general 'not guilty' option." The appellate court stated, "The actual verdict forms which were provided to the jury were as follows: *** not guilty of predatory criminal sexual assault of a child (defendant's fingers to M.L.'s vagina) *** not guilty of predatory criminal sexual assault of a child (defendant's penis to M.L.'s vagina) ***."

In *Durr II*, the appellate court initially reiterated its belief that the "actual verdict forms" provided to the jury included "not guilty" verdict forms that stated, "not guilty of predatory criminal sexual assault of a child," and that the jury "was not given a general 'not guilty' verdict form as to all sex related offenses." However, the appellate court later concluded that defendant had "failed to demonstrate that he was prejudiced by the altered instruction." The court stated:

> "[Defendant] argues that the trial court's alternate instruction effectively denied the jury the option of fully acquitting him of both the greater and lesser-included offenses. The first sentence of the instruction clearly states that: 'Under the law a person charged with predatory sexual assault of a child (hand to vagina, penis to vagina) may be found (1) not guilty...' and goes on to list the alternate guilty verdicts for greater and lesser offenses. Moreover,

during its charge to the jury, the court defined the lesser offenses and indicated that if they found defendant guilty of predatory criminal sexual assault of a child, he wold [*sic*] then be not guilty of the lesser offenses and likewise that if they found him guilty of either of the lesser offenses, he would not be guilty of predatory criminal sexual assault of a child. We find that the general 'not guilty' verdict contained in the instruction gave the jury the option of fully acquitting defendant. We conclude that defendant was not prejudiced by the giving of the altered instruction because the instruction coupled with the trial court's charge to the jury regarding the lesser-included offenses cured any error. Accordingly, we find that this *error* did not seriously affect the fairness, integrity or public reputation of judicial proceedings." (Emphasis added.) *Durr II*, No. 1—01—1711 (unpublished order under Supreme Court Rule 23).

The court then concluded, "that the giving of the altered instruction by the trial court was *not error* and that defendant was not deprived of a fair trial." (Emphasis added.) Thus, the appellate court expressed ambivalence, at best, as to whether the altered instruction was error at all, but found that any error did not affect the fairness of defendant's trial.

As previously indicated, we allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315. Defendant's sole claim of error on appeal relates to alleged instructional errors at trial. He argues that the appellate court "erred in applying the federal plain-error test to [his] case." He states that "the instructional errors raised [in this appeal] are subject to review under Illinois' long-standing plain-error test, which is set forth in Rule 615(a)." He suggests that application of *our* plain error rule would alter the outcome on appeal.

## ANALYSIS

At the outset, we note that supervisory orders issued by this court are "nonprecedential." *First American Bank v. Guerine*, 198 Ill. 2d 511, 520 (2002). Moreover,

we note that the question before us is " 'the correctness of the result' " reached by the appellate court (*People v. Johnson,* 208 Ill. 2d 118, 128 (2003), quoting *People v. Novak,* 163 Ill. 2d 93, 101 (1994)), not the reasons given therefor. *City of Champaign v. Torres,* 214 Ill. 2d 234, 241 (2005). We are in no way constrained by the appellate court's reasoning and may affirm on any basis supported by the record. *Torres,* 214 Ill. 2d at 241. Finally, we note that the interrelation and consistency of federal and state plain-error standards are matters this court has recently addressed in *People v. Herron,* 215 Ill. 2d 167 (2005). We need not do so here.

Our plain-error analysis, as it pertains to instructional error, has developed in a significant and unbroken line of this court's precedent, in which we have applied the consistent principles of Illinois Supreme Court Rules 451(c) and 615(a) (177 Ill. 2d R. 451(c); 134 Ill. 2d R. 615(a)). Recently, in *People v. Hopp,* 209 Ill. 2d 1, 8-17 (2004), this court undertook plain-error analysis utilizing Rule 451(c). Although we focused on Supreme Court Rule 451(c) in *Hopp,* because—unlike the defendant in this case—Hopp failed to object to the alleged instructional error at trial, we note that the plain-error analyses under Supreme Court Rules 451(c) and 615(a) are construed identically. See *People v. Armstrong,* 183 Ill. 2d 130, 151 n.3 (1998) ("Rule 451(c) offers a remedy for 'grave errors,' which parallels Rule 615(a)'s remedy for plain errors generally, and we construe Rule 451(c) and Rule 615(a) 'identically' "), quoting *People v. Keene,* 169 Ill. 2d 1, 31-32 (1995). In *Keene,* this court noted:

> "Rule 451(c) is not expressly addressed to the type of procedural default arising here, the *failure to include an issue in a written post-trial motion.* The rule is expressly addressed to the failure to make a timely trial objection. But the point is immaterial. Rule 451(c) and Rule 615(a) are construed identically. Even if no chance of excusing the bar could exist under the language of Rule 451(c), plain error

would remain an avenue for relief pursuant to Rule 615(a): jury instructions are recognized as implicating substantial rights." *Keene*, 169 Ill. 2d at 32.

Thus, this defendant, who objected at trial but failed to preserve the instructional issue by including it in a posttrial motion, is subject to the standards we applied in *Hopp* and other cases applying Rule 451(c), though plainerror review in *this* case is accomplished under Rule 615(a).

Under either Rule 615(a) or Rule 451(c), "a procedural default will not bar review of an error in jury instructions involving a substantial right if to honor the bar would work fundamental unfairness." *Keene*, 169 Ill. 2d at 31. Although this court has expressed essentially the same proposition of law utilizing slightly different terminology, under either rule this court will invoke the plain-error doctrine to review procedurally defaulted instructional errors—though the evidence is not closely balanced—if substantial rights are implicated and the fundamental fairness of the proceeding is in doubt. See *Keene*, 169 Ill. 2d at 32 ("[P]lain error would remain an avenue for relief pursuant to Rule 615(a): jury instructions are recognized as implicating substantial rights. [Citation.] Concern for whether fundamental unfairness resulted exists because such rights are implicated; the case is not otherwise close factually"); *Hopp*, 209 Ill. 2d at 7-8 ("Rule 451(c)'s exception to the waiver rule for substantial defects applies when there is a grave error *or* when the case is so factually close that fundamental fairness requires that the jury be properly instructed." (Emphasis added.) Rule 451(c) applies when there are "serious errors which severely threaten the fundamental fairness of the defendant's trial"); *People v. Williams*, 193 Ill. 2d 306, 357 (2000) ("Under an exception to the waiver rule, Rule 451(c) permits a court to consider substantial defects in instructions despite a defendant's failure to make a timely objection, if the interests of

justice require. [Citation.] Under Rule 615(a), a procedural default may be excused when the evidence is closely balanced *or* when the error is of such magnitude that it deprives the defendant of a fair trial" (emphasis added)). See generally *People v. Blue*, 189 Ill. 2d 99, 138 (2000) (" 'A criminal defendant, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial' conducted according to law. *People v. Bull*, 185 Ill. 2d 179, 214 (1998). \*\*\* [W]hen an error arises at trial that is of such gravity that it threatens the very integrity of the judicial process, the court must act to correct the error, so that the fairness and the reputation of the process may be preserved and protected. Critically, the court will act on plain error *regardless* of the strength of the evidence of defendant's guilt" (emphasis in original)); accord *People v. Johnson*, 208 Ill. 2d 53, 60-61, 64 (2003).

The evidence in *this* case is not closely balanced, so the question is whether a "grave error" has been committed or, stated another way, whether an error of such gravity or magnitude has occurred that the fundamental fairness of defendant's trial has been severely threatened.

We have repeatedly held that "we can review any question not otherwise properly preserved if we believe that plain error affecting a substantial right *may* have occurred." (Emphasis added.) *People v. Shaw*, 186 Ill. 2d 301, 326 (1998). We have reviewed alleged instructional errors under the plain-error doctrine, as affecting substantial rights, even though we have ultimately concluded that "any instructional error was [not] so substantial that it reflected on the fairness of the trial." *People v. Williams*, 181 Ill. 2d 297, 317-20 (1998). Indeed, "to determine whether a purported error is 'plain' requires a substantive look at it. But if, in the end, the error is found not to rise to the level of a plain error \*\*\*, the procedural default must be honored." *Keene*, 169 Ill. 2d at 17.

In *Hopp*, this court held that Rule 451(a) places the burden of persuasion on the defendant who raises a procedurally defaulted instructional error. As this court explained in *Hopp*, Rule 451(c) "does not require that defendant prove beyond doubt that her trial was unfair because [an instructional error] misled the jury to convict her. It does require that she show that the error caused a *severe* threat to the fairness of her trial." (Emphasis in original.) *Hopp*, 209 Ill. 2d at 12. Logically, and pursuant to this court's policy of correlative rule construction, defendant must show as much for purposes of Rule 615(a).

Thus, in this context, defendant must show that the alleged instructional error "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8. Given the argument defendant advances in this case, defendant must show there was a serious risk that the jurors convicted him because they did not understand they had the option of signing a general "not guilty" verdict pertaining to both greater and lesser-included offenses. This, defendant cannot do.

We first consider whether any error occurred at all. See *People v. Sims*, 192 Ill. 2d 592, 621 (2000) (before invoking the plain-error exception " 'it is appropriate to determine whether error occurred at all' "), quoting *People v. Wade*, 131 Ill. 2d 370, 376 (1989). As the State concedes, "defense counsel submitted a jury instruction, dealing with greater and lesser-included offenses, which tracked the language set forth in Illinois Pattern Jury Instruction 2.01R." That instruction apparently would have informed the jury that it could find defendant "not guilty of predatory sexual assault of a child, and not guilty of attempt predatory sexual assault of a child, and not guilty of aggravated criminal sexual abuse, or ***

guilty of predatory sexual assault of a child or guilty of attempt predatory sexual assault of a child or guilty of aggravated criminal sexual abuse." Thus, the instruction would have informed the jury that it could acquit defendant of all offenses after giving *independent* consideration to the elements of each *or* find defendant guilty of the greater offense (predatory criminal sexual assault of a child) or one of the two lesser-included offenses (either attempted predatory sexual assault of a child or aggravated criminal sexual abuse).

Defendant's tendered instruction did indeed adopt the structure, and track the pertinent parts, of IPI Criminal 4th No. 2.01R. That instruction states in relevant part as follows: "Under the law, a person charged with _____ [greater offense] may be found (1) not guilty of _____ [greater offense] and not guilty of _____ [lesser offense]; or (2) guilty of _____ [greater offense]; or (3) guilty of _____ [lesser offense]." IPI Criminal 4th No. 2.01R. Pursuant to directions in the committee note to this instruction, defense counsel added an additional "not guilty" clause to account for an additional lesser-included offense.

The trial court erred when it refused defendant's tendered instruction, which conformed to the pertinent provisions of the applicable IPI instruction. That IPI instruction, along with a corresponding concluding instruction and verdict forms, would have encouraged the jury to examine the elements of each offense separately, and would have emphasized the need for independent consideration of each offense.

When an IPI criminal instruction does not accurately state the law with respect to a particular subject, the trial court may, in its discretion, give a non-IPI instruction on the subject. *People v. Bush*, 157 Ill. 2d 248, 253 (1993). However, as we recently reiterated in *Hopp*: "Supreme Court Rule 451(a) requires that in a criminal

case, if the court determines the jury should be instructed on a subject, and the Illinois Pattern Jury Instruction (IPI), Criminal, contains an applicable instruction, then the IPI instruction 'shall' be given unless the court determines it does not accurately state the law. 177 Ill. 2d R. 451(a)." *Hopp*, 209 Ill. 2d at 7. As this court noted in *People v. Pollock*, 202 Ill. 2d 189, 212 (2002), Illinois pattern instructions have been " 'painstakingly drafted *** so as to clearly and concisely state the law.' " Quoting *People v. Haywood*, 82 Ill. 2d 540, 545 (1980). Trial judges should not take it upon themselves to second-guess the drafting committee where the instruction in question clearly applies.

In this case, the prosecutor objected to the tendered instruction, arguing that it was "unduly complicated" and presented the law to the jury "unfavorably." The trial judge agreed insofar as he found the instruction unduly "confusing." Further, he expressed concern that the tendered instruction would require an excessive number of verdict forms. However, the trial court did *not* find that the instruction failed to state the law accurately.

The tendered instruction applied in this context and, taken in conjunction with other applicable instructions, *would have* stated the law clearly and accurately with respect to the issues under consideration. The tendered instruction reflected the appropriate IPI structure, specifically advising jurors that they could find defendant not guilty of the greater offense and not guilty of each of the lesser-included offenses. Therefore, the trial court erred when it gave non-IPI instructions on this point.

Notwithstanding, there is no doubt that the error is *de minimis* and did not result in "fundamental unfairness" or cause a "severe threat" to the fairness of defendant's trial. See *Keene*, 169 Ill. 2d at 32; *Hopp*, 209 Ill. 2d at 12. Consequently, defendant cannot establish plain error. See also *Johnson*, 208 Ill. 2d at 64 ("Absent

reversible error, there can be no plain error"); *Williams*, 193 Ill. 2d at 348 (same).

If the instructions given the jury had denied the jury the option of returning a general "not guilty" verdict, as defendant contends, a significant structural error would have occurred for purposes of our rules, substantial rights would in fact have been violated, and the fairness and integrity of the trial process would have been compromised. However, that is not what happened in this case.

The record is replete with references to a general "not guilty" option, both in the instructions conference and in the instructions and verdict forms given by the trial court and read to the jury. Though the recitation of facts we have previously provided amply demonstrates that to be true, we will reiterate the bases for our conclusion.

In rejecting defendant's tendered instruction, the trial court stated the instruction "should read *** a person charged with predatory sexual assault of a child, hand to vagina, penis to vagina, may be found, one, not guilty, or two, guilty of predatory criminal sexual assault of a child, or guilty of attempt predatory sexual assault of a child or guilty of aggravated criminal sexual abuse." The court continued, noting that the jurors would get four forms of verdict as to each alternative theory: "In essence, they should sign one, either not guilty, guilty of predatory sexual assault of a child[,] penis to vagina, hand to vagina, whatever, guilty of aggravated criminal sexual abuse, and, or guilty of an attempt predatory sexual assault of a child." The court observed that the jury would have "four possibilities, attempt predatory criminal sexual assault, aggravated criminal sexual abuse, guilty as charged initially or not guilty of anything."

When defense counsel expressed concern that the

"not guilty" verdict form would read "not guilty of predatory criminal sexual assault," the trial court assured him, "It will just say not guilty." The court later reiterated, "There will just be one verdict form that will say not guilty in relation to those two separate counts, not guilty of anything ***." Still later during the instruction conference, when the matter of verdict forms was specifically addressed, the court directed defense counsel "to make a verdict form which reads in essence not guilty of predatory criminal sexual assault of a child, attempt predatory criminal sexual assault of a child and aggravated criminal sexual abuse, one verdict form that says not guilty of all three of those things. *** One will say not guilty of any of that kind of conduct." Subsequently, the trial court *again* stated, "There is one verdict form which says not guilty regarding that kind of conduct and three alternative forms of guilty referring to conduct of the different charges, predatory criminal sexual assault, aggravated criminal sexual abuse or attempt." Finally, at the conclusion of the instruction conference, the court again verified, with respect to the predatory criminal sexual assault charges (finger to vagina, and penis to vagina), there would "be *** plain outright not guilty" verdict forms.

Certainly, there can be no doubt that the trial court intended to give the jury the option of a general acquittal as to each of the two kinds of conduct charged (finger to vagina, and penis to vagina) and, to that end, saw to it that instructions and verdicts forms were drafted to make that option available to the jury. That intent was evident throughout the instruction conference. That objective came to fruition when the court instructed the jury on the applicable law and read from the verdict forms it gave the jury.

Consistent with the discussion during the instructions conference, after closing arguments, the court

informed the jury that "a person charged with predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina, and Floyd Durr's penis to [M.L.'s] vagina), may be found *not guilty*, or two, guilty of predatory criminal sexual assault of a child, or three, guilty of attempt predatory criminal sexual assault of a child, or four, guilty of aggravated criminal sexual abuse." (Emphasis added.) After advising the jury of the propositions the State was required to prove to convict defendant of the lesser-included offenses, the court informed the jury, "If you find from your consideration of all the evidence any one of these propositions has not been proved beyond a reasonable doubt you should find the defendant not guilty." The court told the jury:

"[Y]ou are provided with four verdict forms pertaining to the charge of predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), *not guilty*, guilty of predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), guilty of attempt predatory criminal sexual assault of a child, (Floyd Durr's fingers to [M.L.'s] vagina), and guilty of aggravated criminal sexual abuse, (Floyd Durr's fingers to [M.L.'s] vagina).

From these four verdict forms, you should select the one verdict form that reflects your verdict and sign it as I have instructed. Do not write at all on the other three verdict forms. Sign only one of these verdict forms." (Emphasis added.)

The court gave an identical instruction with respect to the predatory criminal sexual assault charge based on the allegation of penis-to-vagina contact. The trial court explained to the jurors that they should sign only the guilty verdict for predatory criminal sexual assault if they found defendant guilty of that offense; in that event, they should not sign guilty verdicts pertaining to the lesser-included offenses.

Finally, the court read from the verdict forms it was providing to the jury. With respect to the "not guilty" verdict form pertaining to finger-to-vagina contact, the

court recited the language of the given verdict form as follows:

> " 'We the jury, find the defendant, Floyd Durr, not guilty, (Floyd Durr's fingers to [M.L.'s] vagina).' "

With respect to the "not guilty" verdict form pertaining to penis-to-vagina contact, the court recited the language of the given verdict form as follows:

> " 'We, the jury, find the defendant, Floyd Durr, not guilty, (Floyd Durr's penis, [M.L.'s] vagina).' "

As previously indicated, the common law record contains written verdict forms mirroring those read to the jury by the trial court, and alternate written versions, using the language "not guilty of predatory criminal sexual assault of a child." The latter versions are marked, "given, no objection."

In support of his argument that the jury was not given a general "not guilty" option, defendant points to the latter versions in the common law record. He contends that the verdict forms given the jury allowed the jury to find defendant "not guilty of predatory criminal sexual assault," but did not allow the jury to find defendant "not guilty" of all offenses under consideration. He chides the State for suggesting, for the first time before this court, that the verdict forms marked "given" in the common law record were not the verdict forms the jury actually received.

Insofar as defendant *suggests* the State has waived this facet of its argument (defendant cites no supporting cases to that effect), we note that waiver is a limitation on the parties, not on this court. *Zaabel v. Konetski*, 209 Ill. 2d 127, 136 (2004). In the interest of justice, this court may consider an issue that a party has waived. *Zaabel*, 209 Ill. 2d at 136. Moreover, as a prevailing party in the court below, the State may raise any arguments in support of that court's judgment. See generally *People v. Pinkonsly*, 207 Ill. 2d 555, 563 (2003). In any event, we

will consider the State's contention, which we believe is valid.

It is obvious to us, from our review of the report of proceedings, that the verdict forms which the trial court actually *read* to the jury were the only "not guilty" verdict forms the jury was given in this respect. The trial court mentions no others. Although the common law record imports verity and is presumed correct, where the common law record is contradicted by matters in the report of proceedings, a reviewing court must look at the record as a whole to resolve the inconsistencies. *People v. Fike*, 117 Ill. 2d 49, 56 (1987). In this case, everything the trial judge said during the instruction conference indicated he would give the jury general "not guilty" verdict forms with respect to finger-to-vagina and penis-to-vagina conduct, respectively. At one point, defense counsel expressed concern that the "not guilty" verdict form would read "not guilty of predatory criminal sexual assault," and the trial court assured him, "It will just say not guilty." The verdict forms the court read to the jury were consistent with that assurance, stating simply "not guilty" of *the type of conduct* which formed the basis for *both* greater and lesser-included offenses. It is evident that the verdict forms reading "not guilty of predatory criminal sexual assault" were mistakenly marked "given" during the instructions conference and were not read or submitted to the jury. The clean copies that the jury received stated, simply, "not guilty."

Because the jury in this case did not receive the verdict forms mistakenly marked "given," and was unequivocally instructed that it could find defendant not guilty of all offenses under consideration, defendant's reliance upon *People v. James*, 255 Ill. App. 3d 516 (1993), is misplaced and unavailing. In *James*, the trial court agreed to give the jury the following three verdict forms: "guilty of aggravated arson," "guilty of arson," and "not

guilty of any arson related offense." However, during its admonishment to the jury, the trial court told the jury that the three verdict forms it would receive would read "guilty of aggravated arson," "guilty of arson," and "not guilty of aggravated arson." The latter instruction had been previously withdrawn by the State. The court did not mention a verdict form stating "not guilty of any arson related offense." In the common law record, all four of the above mentioned verdict forms had the notation "given" in the bottom margin. The jury returned a verdict of "guilty of aggravated arson." *James*, 255 Ill. App. 3d at 523.

On appeal, defendant advanced the same argument that defendant makes in this case, *i.e.*, that the jurors did not realize they had the option of acquitting him of all offenses under consideration. Noting that the State had not even argued "that the certified reading of the instructions was inaccurate," the appellate court in *James* reversed and remanded for a new trial, stating:

"In this case, the State does not offer any evidence to prove nor, for that matter, does it even argue, that the certified record of the reading of the instructions was inaccurate. As is shown by the above-cited cases, the mere fact that correct instructions are found in the court file is insufficient to prove that the jury was so instructed. Therefore, we are bound by the certified report of proceedings and must proceed under the assumption that the jury received the incorrect instructions which provided for verdicts of 'not guilty of aggravated arson,' 'guilty of aggravated arson,' and 'guilty of arson.' " *James*, 255 Ill. App. 3d at 528.

In *this* case, adequate verdict forms *were* read to the jury. Moreover, unlike the record in *James*, the record in this case reveals repeated statements by the trial court indicating that it would give the jury a general "not guilty" verdict form as to *the type of conduct* under consideration. With respect to the alleged conduct underlying the two predatory criminal sexual assault

charges in question (finger to vagina, and penis to vagina), the jurors were adequately apprized that there were three offenses under consideration and that they could find defendant not guilty of all three. Finally, unlike *James*, the State—albeit belatedly—makes the appropriate argument, pointing out what should have been obvious heretofore.

In sum, defendant cannot show that the *de minimis* instructional error in this case resulted in fundamental unfairness or caused a "severe threat" to the fairness of his trial. Therefore, applying our long-standing principles of plain-error analysis in this instructional context, we find that defendant has suffered no injustice, and we thus hold that the procedural default must be honored. See *People v. Hart*, 214 Ill. 2d 490, 513 (2005), citing *Keene*, 169 Ill. 2d at 17 (recognizing that when plain error is lacking, "the procedural default must be honored").

For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*