THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PERRY WARD, Defendant-Appellant.

First District (5th Division)    No. 1—07—1925

Opinion filed March 31, 2009.—Rehearing denied May 27, 2009.

Patricia Unsinn and Jessica D. Pamon, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Douglas P. Harvath, and Joseph A. Alexander, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a jury trial, defendant Perry Ward was convicted of criminal sexual assault of Mable M. and sentenced as a Class X offender to 25 years' imprisonment. Defendant appeals, contending the trial court erred by: (1) admitting other-crimes evidence to show defendant's propensity to commit sex crimes; (2) relying during sentencing on evidence of a prior sex crime for which defendant had been acquitted; and (3) incorrectly sentencing him as a Class X offender. We affirm.

The evidence at trial showed that defendant sexually assaulted Mable M. on February 23, 2002. Defendant's trial for this sexual assault did not begin until May 29, 2007. Prior to the beginning of this trial, defendant was charged with and acquitted of the alleged June 5, 2003, sexual assault of Lisa S. Both victims had sexual assault examinations performed following their attacks. DNA from the semen collected from both victims matched defendant's DNA.

Prior to the Mable M. trial, the State sought to admit the testimony of Lisa S. under section 115—7.3 of the Illinois Code of Criminal Procedure of 1963 (section 115—7.3) (725 ILCS 5/115—7.3

(West 2006)) to show defendant's propensity to commit sex crimes. The State argued that, due to the proximity in time between the two offenses, the factual similarities of the offenses, and other relevant factors, the probative value of admitting Lisa's testimony outweighed its prejudicial impact. Defendant argued that, where the two offenses were factually dissimilar, the prejudicial effect of admitting Lisa S.'s testimony outweighed its probative value.

After hearing arguments, the trial court allowed the evidence, noting that the two alleged assaults occurred approximately 16 months apart. The court stated that, pursuant to *People v. Donoho*, 204 Ill. 2d 159 (2003), it considered the three factors of proximity in time, degree of similarity, and other relevant factors when determining whether the probative value of the testimony favored its admissibility. The court found that the 16 months that passed between the two assaults were "not a remarkable variance" and were within an acceptable time frame. While it noted that the two assaults took place in different areas, one on the south side of Chicago and one in the south suburban area, it found similarity in the demographic profile of the victims, as well as in the introduction of defendant to each victim. Moreover, in each case, defendant took the victims to secluded areas where multiple sexual acts were completed with force and threats. There was also DNA evidence connecting the incidents. As to other relevant facts and circumstances, the court noted that defendant's defense of consent was similar in each case. The court allowed the testimony, in relevant part, for propensity to commit sex crimes under *Donoho*.

Forty-nine-year-old victim Mable M. testified at trial that, on February 23, 2002, she left her home after midnight to walk to a nearby restaurant and store. Her husband was asleep at the time. She spoke with people at the restaurant, including defendant. During the course of the conversation, Mable M. asked defendant for a cigarette. He told her his cigarettes were in his nearby van and invited her to accompany him to retrieve them.

At the van, defendant opened the passenger side door and told Mable M. the cigarettes were inside on the seat. When she reached for what she thought were cigarettes, defendant pushed her into the van. There was no passenger seat, and defendant shoved her toward the back of the van and got in behind her.

Inside the van, defendant told Mable M., "Bitch, if you holler, I will kill you." She was scared, but she did not scream. Defendant forced Mable M. to remove her clothes. He held her down. Mable M. noticed defendant had some type of object in his hand. Defendant forced Mable M. to touch his penis and then perform oral sex on him. He repeatedly told her, "Bitch, I will kill you if you tell anybody about

this." After she performed oral sex on him, defendant attempted to engage in anal intercourse with Mable M. She fought with him and, eventually, he had vaginal intercourse with her. Mable M. testified that, over the course of the four hours she was held inside the van, defendant had nonconsensual vaginal intercourse with her "several" times.

After four or five hours, defendant allowed Mable M. to leave the van, advising her that he would kill her if she told anyone. Mable M. ran home. She told her husband she had been raped. Her husband called the police, and the police took Mable M. to the hospital. At the hospital, Mable M. was given a sexual assault examination.

Mable M. testified that she went to the police station later that evening and viewed a lineup. She did not identify anyone in the lineup as her attacker. Defendant was not in the lineup. Subsequently, Mable M. moved to Georgia.

The parties stipulated that, if called to testify, Illinois State Police forensic scientist Marla Fiorelli would testify that the vaginal swabs collected from Mable M. during her sexual assault examination revealed the presence of semen.

The parties also stipulated that, if called to testify, forensic scientist Brian Schoon would testify that he reviewed the DNA profile from the vaginal swab collected from Mable M. and found that it matched the male DNA profile collected from defendant. The male DNA profile identified in the vaginal swabs would be expected to occur in approximately 1 in 13 quadrillion Blacks, 1 in 2.1 quadrillion Whites, or 1 in 1.7 quadrillion Hispanics.

Lisa S. testified that, in June of 2003, she lived in Harvey, Illinois. On June 4, 2003, she went to a party at a friend's house where she drank alcohol and used cocaine. Lisa left the party at approximately 10:30 p.m. She planned to walk home. She walked toward 154th Street and Broadway Street, but she saw a train sitting on the train tracks blocking her path. Lisa then walked to a nearby payphone, placed a call, and then walked to a nearby bar to ask a friend for a ride home. On her way to the bar, she saw defendant, who asked her for a cigarette. She gave him one. She continued to the bar, but it was closed. As she walked away, Lisa S. noticed defendant walking with another person. She continued walking and, as she started to cross the train tracks, she saw defendant standing alone in the bushes. Defendant asked Lisa S. if she wanted to have sex with him, and she told him to get away from her. Defendant walked toward Lisa S., and she attempted to run. Defendant grabbed her by her hair and pulled out a knife. Defendant put the knife to her throat and said, "Shut the fuck up, bitch, or I'll kill you." Defendant pulled Lisa S. through some

bushes to a concrete area where they struggled. Defendant knocked her to the ground and slammed her head against the concrete. Defendant unzipped his pants and forced his penis into Lisa S.'s mouth. Lisa S. testified that defendant then forced her to remove her pants and have vaginal intercourse with him. Defendant did not wear a condom.

After the attack, Lisa S. ran home. She told her fiancé she had been raped, and he called the police. The police arrived, took her to the scene of the assault, and then to the hospital. Upon entering the emergency room, Lisa S. saw defendant sitting in the waiting room and exclaimed, "There is the guy who raped me." Defendant was arrested. A sexual assault examination was performed on Lisa S., and biological samples were collected.

Chicago police detective Robert Distasio testified that, in March 2005, he contacted Mable M. at her residence in Georgia. At his request, she returned to Chicago and met with detectives. She viewed a lineup in which she identified defendant as her attacker.

The State rested.

Defendant testified that he frequented prostitutes between February 2002 and June 2005. In February 2002, he was having a drink in a tavern when Mable M. entered the tavern and propositioned him for oral sex. He paid her $15, and she performed oral sex on him in the back room of the tavern. Defendant testified that Mable M. then left, and he continued drinking at the bar. Soon after, Mable M. returned, threw a small package of white powder on the bar, and said someone had sold her drywall. Mable M. then had vaginal intercourse with defendant for $10. He testified that he wore a condom.

Defendant also testified that, on June 4, 2003, he went by bus to Harvey, Illinois, to visit Ingalls Hospital. According to defendant, he exited the bus, went to the liquor store to buy a beer, and walked down 154th Street toward the hospital. While he was walking, a number of police cruisers passed by, so he walked into an alley to finish his beer.

Defendant testified that, while in the alley, two women approached him. One of the women was Lisa S. She propositioned him for sex, and he agreed to pay her $20 for vaginal intercourse. He said he would pay her $10 before and $10 after. Defendant testified that he paid Lisa S. $10 and she went to the other end of the alley, purchased narcotics, and smoked the drugs in front of him. Then, they walked to another alley and had vaginal intercourse. Defendant wore a condom, which broke during intercourse. Defendant then paid Lisa S. $10.

Defendant testified that he then met some friends and they drank alcohol together for awhile. After that, defendant continued walking

to the hospital for treatment of his gout. He fell asleep in the emergency waiting room and awoke when Lisa and the police officers walked in. He was arrested.

The jury found defendant guilty of criminal sexual assault. The trial court found that defendant was Class X eligible and sentenced him to 25 years' imprisonment. Defendant filed a motion to reconsider sentence. However, defendant decided to strike paragraph four of the motion, which stated, "The State failed to prove eligibility for enhanced penalty or extended term." Defendant rested on the motion. The court denied the motion, and this appeal follows.

## ANALYSIS

### Collateral Estoppel

■ First, defendant contends that the trial court erred in allowing Lisa S.'s testimony at trial to show his propensity to commit sex offenses. Specifically, defendant argues that the State was collaterally estopped from introducing this other-crimes evidence where defendant had previously been acquitted of the sexual assault of Lisa S. We disagree.

Initially, we note that defendant has forfeited this issue by failing to object at trial and failing to include it in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review). Although defense counsel objected to the use of other-crimes evidence multiple times during trial, arguing that it was too prejudicial, and also included the claim in his posttrial motion, he failed to object on collateral estoppel grounds. Defendant admits that he failed to properly preserve this issue for appeal, but urges us to consider it as plain error on the bases that substantial rights are involved and that the evidence was closely balanced. 134 Ill. 2d R. 615; *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005) (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial). We first consider whether any error occurred at all. *People v. Durr*, 215 Ill. 2d 283, 299 (2005).

Collateral estoppel is an equitable doctrine that prevents a party from relitigating an issue that has been decided in a prior proceeding. *People v. Moreno*, 319 Ill. App. 3d 445, 450 (2001). "The doctrine applies if (1) the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment on the merits; and (3) the party against whom

the estoppel is asserted was a party or in privity with a party in the prior suit." *In re Nau*, 153 Ill. 2d 406, 424 (1992).

Evidence that resulted in a prior acquittal can be used for limited purposes in the guilt phase of a trial for another offense. *Dowling v. United States*, 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990) (although defendant was previously acquitted of armed robbery, evidence of the armed robbery was admissible for purposes of identification in a subsequent bank robbery prosecution); *People v. Jackson*, 149 Ill. 2d 540, 550 (1992). The *Dowling* court reasoned that the "State is not precluded from 'relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.' " *Jackson*, 149 Ill. 2d at 550, quoting *Dowling*, 493 U.S. at 349, 107 L. Ed. 2d at 718, 110 S. Ct. at 672. An acquittal is not conclusive evidence that a defendant did not commit the alleged conduct; it merely shows that the State was unable to prove every element of its case beyond a reasonable doubt. See *Jackson*, 149 Ill. 2d at 550-51.

Here, collateral estoppel does not apply because, although defendant's acquittal in the case of Lisa S. was a final judgment on the merits and the State was a party to that trial, the issue in the case at bar is not the same as that in Lisa S.'s trial. The issue in the Lisa S. trial was whether defendant sexually assaulted Lisa S., not Mable M., 16 months after the Mable M. assault in an entirely different locale. There were two separate assaults. Thus, the issues were not identical and, accordingly, collateral estoppel does not apply.

Even if the issues were identical, as defendant argues, the State was not precluded from introducing the testimony at trial where the testimony was used as evidence and, as such, was governed by a lower standard of proof than beyond a reasonable doubt. See *Nau*, 153 Ill. 2d at 425. Here, Lisa S.'s testimony was allowed in under section 115—7.3 to show defendant's propensity to commit sex offenses. As such, the State was not required to prove defendant sexually assaulted Lisa S. beyond a reasonable doubt. Rather, the admission of Lisa S.'s testimony was dependent upon its relevancy. "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence." *People v. Jones*, 328 Ill. App. 3d 233, 238 (2002). A reviewing court will not reverse the trial court's decision to admit other-crimes evidence absent an abuse of discretion. *Donoho*, 204 Ill. 2d at 183.

Section 115—7.3 applies, in relevant part, to a defendant who is accused of criminal sexual assault, and it provides that evidence of the defendant's commission of another criminal sexual assault may be admissible if that evidence is otherwise admissible under the rules of

evidence and may be considered for any matter to which it is relevant. It further provides:

"In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." 725 ILCS 5/115—7.3 (West 2006).

Here, pursuant to section 115—7.3, the trial court appropriately determined the relevancy of the testimony through the balancing test of probative value versus prejudice to the defendant. Defendant was charged with the criminal sexual assault of Mable M. and previously charged with the criminal sexual assault of Lisa S. Criminal sexual assault is listed as an offense to which section 115—7.3 applies. As discussed above, that defendant was acquitted of the Lisa S. charge is not dispositive of the issue here. We therefore consider whether the trial court abused its discretion by admitting evidence because its prejudicial effect is substantially outweighed by its probative value. To do so, we consider the three balancing factors enumerated in section 115—7.3: proximity in time; degree of factual similarity; and other relevant facts and circumstances. 725 ILCS 5/115—7.3 (West 2006).

First, the proximity in time to the charged or predicate offense was only 16 months. The trial court did not abuse its discretion in finding that this time span was within the time considered admissible. See *Donoho*, 204 Ill. 2d at 184 (the admissibility of other-crimes evidence is not controlled solely by the number of years elapsed between the prior offense and the crime charged, and the 12- to 15-year lapse between the crimes in *Donoho* was not so long that the evidence could not be admitted).

Second, the prior offense and the crime charged had a high degree of factual similarity. The trial court did not abuse its discretion in finding that the two crimes were similar enough to support admissibility. When using a prior offense to show propensity under section 115—7.3, areas of threshold similarity are sufficient to support admissibility. *Donoho*, 204 Ill. 2d at 184. The relevance of other-crimes evidence increases as factual similarities increase. *Donoho*, 204 Ill. 2d at 184. "Where such evidence is not being offered under the *modus operandi* exception, 'mere general areas of similarity will suffice' to support admissibility." *Donoho*, 204 Ill. 2d at 184, quoting *People v. Illgen*, 145 Ill. 2d 353, 372-73 (1991).

Here, as the court noted, both victims share the same demographic profile: both were middle-aged African-American women walking alone at night. Defendant attacked each woman in a secluded place and used force to get each woman to the place of the attack. In both attacks, defendant threatened the victim with death if she were not quiet. Both times, defendant attempted to engage the women in conversation before the attack, and in each case, the attempted conversation was about cigarettes. Defendant made each victim remove her clothing and then sexually assaulted her. Defendant's semen was found inside each victim. In each case, defendant claimed that each woman was a prostitute and that the sex was consensual.

The third balancing factor is "other relevant facts and circumstances." We note that the goal of section 115—7.3 is to promote "effective prosecution of sex offenses and strengthen[ ] evidence in sexual abuse cases." *Donoho*, 204 Ill. 2d at 178. The statute, modeled after Federal Rules 413 and 414, is unique to sex offenders, recognizes their propensity to repeat their crimes, and allows the court to use such evidence to help protect society. *Donoho*, 204 Ill. 2d at 173-74, quoting 90th Ill. Gen. Assem., Senate Proceedings, March 19, 1997, at 56-57 (statements of Senator Radogno). Here, the evidence demonstrated defendant has the propensity to commit sex crimes after which, when he is captured, he claims the woman is a prostitute and the sex was consensual. The fact that defendant used this excuse repeatedly is relevant information which the legislature contemplated would be admitted into evidence.

Based on this record, we conclude that the probative value of defendant's previous sexual assault of Lisa S. outweighed any prejudice against defendant, and the trial court did not abuse its discretion by allowing Lisa S.'s testimony during the Mable M. trial to show propensity to commit sex crimes.

■ Defendant also argues that the court erred by instructing the jury it was to determine whether defendant was involved in the sexual assault of Lisa S. Specifically, defendant argues this was error because, where the previous jury acquitted defendant of sexually assaulting Lisa S., it "necessarily determined that [he] did not have nonconsensual sex with her and therefore did not commit a sexual offense." We disagree, as an acquittal is not conclusive evidence that defendant did not commit the acts alleged. *Jackson*, 149 Ill. 2d at 550-51. Rather, an acquittal merely shows that the State was unable to prove every element of its case against defendant beyond a reasonable doubt. *Jackson*, 149 Ill. 2d at 550-51.

Moreover, the trial court clearly established the parameters for the use of Lisa S.'s testimony by the jury. Prior to Lisa's testimony, the court admonished the jury:

"Ladies and Gentlemen, evidence is about to be received that the defendant was involved in an offense other than that charged in the indictment. This evidence will be received on the issue of the defendant's propensity to commit sex crimes and lack of consent and may be considered by you only for that limited purpose, it is for your [sic] to determine whether the defendant was involved in that offense and if so, what weight should be given to the evidence on this issue of the defendant's propensity to commit sex crimes and lack of consent."

The trial court gave a similar admonishment at the close of Lisa S.'s testimony. Then, at the close of evidence, the trial court both read and gave the jury in written form the following limiting instruction:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received on the issues of defendant's propensity to commit sex crimes and the lack of consent and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issues of defendant's propensity to commit sex crimes and lack of consent."

The testimony of Lisa S. was admitted as evidence. Defendant was not being tried for sexually assaulting Lisa S. The jury, sitting as the trier of fact, was responsible for determining the credibility of the witness and the weight to be given her testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). It was not error for the court to instruct the jury to listen to the evidence and weigh it accordingly.

■ Defendant also contends that the trial court erred in precluding the defense from informing the Mable M. jury that defendant had been acquitted in the Lisa S. case. We disagree.

The trial court noted that the evidence presented in Lisa S.'s trial was different from that presented in Mable M.'s trial, stating:

"And the thing that would concern me is that I don't think it's proper to allow this jury to hear what another jury did or didn't do. And I think one of the most compelling reasons for that is that—is that the same evidence is not going before both juries. *** This jury will have twice as much in the way of eyewitness testimony. They can believe it or not, believe it as the case may be, but I mean you are comparing apples and oranges. It's not the same evidence that would be presented."

The court noted that the fact one jury heard certain evidence and found defendant not guilty does not mean another jury would do the same in resolving the issue of guilt in another offense, stating:

"The not guilty verdict [in] either questioning or argument has no place here. *** But what one jury does, you know, it could be—it could be the adroitness and the masterful trial technician, that lawyer that holds a jury to say guilty on one and not guilty of another alternative."

In our review of Illinois cases, we have found nothing that would require the trial court in this particular case to notify the jury of the prior acquittal. Rather, as discussed previously, where other-crimes evidence meets the preliminary statutory requirements, it is admissible if (1) it is relevant; and (2) its probative value is not outweighed by its prejudicial effect. *Donoho*, 204 Ill. 2d at 177-78. The admission of other-crimes evidence should be limited so as not to become a focal point of the trial, and the detail and repetition admitted must be narrow so as to avoid a trial within a trial. *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006). A trial court can avoid the problem of a trial within a trial by carefully limiting the details of the other crime to what is necessary to "illuminate the issue for which the other crime was introduced." *People v. Nunley*, 271 Ill. App. 3d 427, 432 (1995). We also note that the Supreme Court did not find error in the *Dowling* court's decision to exclude evidence of defendant's prior acquittal.

We believe the other-crimes evidence in this case was sufficiently tailored to fulfill its purpose. Specifically, the evidence was limited to the testimony of a single witness, and, as discussed previously, the trial court gave specific limiting instructions both before and immediately following that testimony, as well as a limiting jury instruction.

We find no abuse of discretion and no error here, where the trial court properly balanced the probative value of the evidence against undue prejudice to defendant, found that the probative value outweighed the prejudice, and allowed the evidence to come in. Accordingly, defendant is unable to show plain error. See *Durr*, 215 Ill. 2d at 299.

## Sentencing

■ Next, defendant contends the trial court erred where it considered defendant's acquitted sex offense during sentencing. We disagree.

Defendant has forfeited this issue for review by failing to raise the issue at sentencing and failing to include it in his posttrial motion. *Enoch*, 122 Ill. 2d at 186. Defendant concedes as much, but asks us to review this issue for plain error. 134 Ill. 2d R. 615; *Herron*, 215 Ill. 2d at 186-87. We first consider whether any error occurred at all. *Durr*, 215 Ill. 2d at 299.

Our supreme court has noted the importance of a sentencing court having the most thorough information possible regarding the

defendant's life and characteristics. *Jackson*, 149 Ill. 2d at 547-48, citing *People v. Adkins*, 41 Ill. 2d 297, 301 (1968). The trial court may appropriately consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age when sentencing a defendant. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Evidence of past criminal conduct is relevant information at sentencing. *Jackson*, 149 Ill. 2d at 548. "The source and type of information that the sentencing court may consider is virtually without bounds." *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008). A sentencing court may even consider crimes of which a defendant has been acquitted (*People v. Deleon*, 227 Ill. 2d 322, 340 (2008), *Jackson*, 149 Ill. 2d at 549-50) because a finding of not guilty is not the same as conclusively finding that the defendant did not commit the crime. *Jackson*, 149 Ill. 2d at 550-51. Evidence at sentencing may be considered if it is reliable and relevant and subject to cross-examination. *Rose*, 384 Ill. App. 3d at 941. The determination of whether evidence is relevant and reliable is within the sentencing court's discretion. *Rose*, 384 Ill. App. 3d at 941. An abuse of discretion will be found only where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

Here, during sentencing, the court stated:

"The Court, of course, having presided over this case from its inception and being familiar with the facts of the case, the allegations, the other crime evidence itself, the matters set forth in the pre-sentence investigation report, matters in aggravation and mitigation that the Court is called upon to consider have all been the basis of the Court's consideration."

The sentencing court did not abuse its discretion where, under *Jackson* and *Deleon*, it appropriately considered evidence of defendant's prior acquittal during the sentencing phase of defendant's trial. The evidence was relevant because it involved a prior sexual assault and demonstrated defendant's propensity to commit sex offenses. The evidence was reliable because it came directly from the victim, who was available for cross-examination. Moreover, defendant had the opportunity, although he did not avail himself of it, to rebut the testimony by testifying in his own defense at sentencing. Accordingly, defendant's claim fails because he is unable to show plain error. See *Durr*, 215 Ill. 2d at 299.

## Class X Sentencing

■ Next, defendant contends that the trial court erroneously determined that he had two prior Class 2 felony convictions which made him eligible to be sentenced as a Class X offender. Specifically,

defendant argues that the court incorrectly considered a 1982 parole violation and reincarceration as a separate Class 2 conviction. We disagree.

Initially, the State argues that defendant has waived this issue by failing to properly preserve it for appeal. However, we review this issue because a sentence that is not authorized by statute is not subject to waiver and may be corrected at any time. *People v. Arna*, 168 Ill. 2d 107, 113 (1995).

The mandatory Class X sentencing statute provides, in relevant part, that a defendant who is convicted of a Class 2 felony after having been twice convicted of another Class 2 or greater class felony, shall be sentenced as a Class X offender. 730 ILCS 5/5—5—3(c)(8) (West 2006). The Class X statute only applies when each qualifying felony was committed after conviction for the earlier qualifying felony. 730 ILCS 5/5—5—3(c)(8) (West 2006). The sentencing range for a Class X felony is 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 2004).

Defendant urges us to review this issue *de novo*. We decline to do so, as the issue in this case is whether defendant's 1982 conviction was a conviction or a reincarceration for a parole violation. As such, this is a factual question which we review for an abuse of discretion. See *People v. Jones*, 168 Ill. 2d 367, 373 (1995).

During the sentencing hearing, the trial court reviewed the record and defendant's convictions and sentences, as well as defendant's presentencing investigation report, and allowed counsel for defendant and the State to make corrections. During this hearing, the following exchange occurred:

"THE COURT: So, if I understand what you're saying, he has one, two, three class two convictions, two burglaries and a robbery, is that right?

[ASSISTANT STATE'S ATTORNEY]: No, Judge, actually its not. The '98 case is a robbery. 1993 is attempt robbery. The September 10th, 1982 was for a burglary. It's on the bottom of the first page of the cases. He got four years for that.

THE COURT: All right.

[ASSISTANT STATE'S ATTORNEY]: Then there's 1977. There's two burglaries, one he was sentenced on October 11th and one on September 6th so that actually makes three burglaries.

THE COURT: Three burglaries.

[ASSISTANT STATE'S ATTORNEY]: An attempt robbery and a robbery.

THE COURT: So I take it he is Class X eligible.

[ASSISTANT STATE'S ATTORNEY]: He is based on the 1982 burglary conviction and the 1998 robbery conviction, them both being class 2 offenses, it makes him class X sentencing.

THE COURT: Any other corrections?

[ASSISTANT STATE'S ATTORNEY]: Not as to his criminal history.

[DEFENSE COUNSEL]: If I can have just a moment.

[DEFENSE COUNSEL]: Judge, there are no corrections with respect to his background."

The record before us clearly shows defendant was convicted in 1982 of burglary, which is a Class 2 felony. 720 ILCS 5/19—1(b) (West 2006). He was also convicted of robbery in 1998, which is a Class 2 felony. 720 ILCS 5/18—1(b) (West 2006). He was then convicted in 2007, in the case at bar, of criminal sexual assault, a Class 1 felony. 720 ILCS 5/12—13(b)(1) (West 2006). Accordingly, we find no abuse of discretion where defendant met the statutory requirements for mandatory Class X sentencing.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.