NOTICE
Decision filed 12/09/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200126-U

NO. 5-20-0126

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-CF-1612 |
| | ) | |
| MARLON COLEMAN, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the defendant failed to state the gist of a constitutional claim of ineffective assistance of trial counsel, and the circuit court summarily dismissed his postconviction petition in accordance with postconviction procedures, and any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2   The defendant, Marlon Coleman, is serving an aggregate prison sentence of 140 years for multiple counts of predatory criminal sexual assault of a child, one count of aggravated criminal sexual abuse, and one count of indecent solicitation of a child. He filed a *pro se* petition for postconviction relief (see 725 ILCS 5/122-1 *et seq.* (West 2020)), which the circuit court summarily dismissed. He now appeals from that summary dismissal. The defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this

1

appeal lacks substantial merit. On that basis, it has filed with this court a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support thereof. OSAD gave proper notice to the defendant. This court gave him an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and the accompanying memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                          BACKGROUND

¶ 4                          *The Charges and the Defendant's First Trial*

¶ 5        In 2013, a grand jury returned a 12-count indictment against the defendant. He was charged in counts 1 through 9 with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), in count 10 with aggravated criminal sexual abuse (*id.* § 11-1.60(d)), and in counts 11 and 12 with indecent solicitation of a child (*id.* § 11-6(a)). All nine counts of predatory criminal sexual assault of a child involved the same child; the three other counts involved three other children.

¶ 6        In 2015, the cause proceeded to trial by jury. Testimony from this first trial will be discussed, as necessary, for the resolution of this appeal, *infra*. The court directed a verdict of not guilty on count 11, indecent solicitation of a child. Following deliberations, the jury returned a verdict of guilty on count 10, aggravated criminal sexual abuse. However, the jury could not reach a verdict on counts 1 through 9, predatory criminal sexual assault of a child, or on count 12, indecent solicitation of a child, and the circuit court declared a mistrial on those 10 counts.

¶ 7                              *The Defendant's Second Trial*

¶ 8      Later in 2015, a second jury trial was held on the 10 counts on which a mistrial had been declared.  K.B. was the complainant in counts 1 through 9, predatory criminal sexual assault of a child.  A.J. was the complainant in count 12, indecent solicitation of a child.  Both K.B. and A.J. testified at the second trial.

¶ 9      K.B. testified that she was born on September 2, 2002, making her 12 years old at the time of the second trial.  K.B. testified that she used to live in a house in Cahokia, Illinois.  There, she resided with her mother, Diana Jones, with her "stepdaddy," the defendant, and with her brothers and sisters.  It was at the house in Cahokia that the defendant first forced K.B. to "suck his stuff." He pushed her head "up and down" until "white stuff" came out of his "privacy part."  The experience was "nasty."  K.B. was "8 or 9" years old at the time of that first incident.  On another occasion, in the garage of the Cahokia house, the defendant pulled down K.B.'s pants.  K.B. was lying face-down on a couch in the garage as the defendant placed his "privacy part" inside her "butt" and lay "on top of [her]."

¶ 10     K.B. further testified that, at some point, the entire family moved to a house in East St. Louis.  There, the defendant would put his "privacy part" inside K.B.'s mouth and "butt" on many occasions.  He oftentimes promised her money and cakes in exchange, and she replied, "No.  Keep your stuff."  He then would force her to participate by "grab[bing] [her] neck" and "mov[ing] [her] head up and down," or by "pull[ing] [her] pants down and get[ting] on top of [her]."  Having his "privacy part" in her "butt" was painful.  On one occasion, the defendant used his hand to touch the inside of K.B.'s "private part," causing her pain.

¶ 11     K.B., at some point, wrote a note to the defendant, stating that she was going to tell her mother what the defendant had been doing to her.  The defendant reacted by "throwing [her]

3

around in his room." He threatened to "kill [her] Momma" and to "whup" K.B. As a result, K.B. felt "scared" and as if she could not tell anyone about the abuse. Eventually, in October 2013, when she was 11 years old, K.B. told her mother about the defendant's abuse, and her mother promptly reported it to the police. It was only then that the abuse stopped. For the approximately two years that the defendant sexually abused K.B., K.B. estimated that it occurred "[o]nce a week."

¶ 12    A.J., another of Diana Jones's children, testified that she was born on March 20, 1999, making her 16 at the time of the second trial. The defendant was her former "stepdaddy." A.J. testified that in 2013, the defendant asked her if he could put his "dick" into her "pussy." The question made her "uncomfortable." A.J. also testified about repeated sexual abuse by the defendant, starting when she was nine years old. The abuse ranged from touching A.J. "[e]verywhere" "[o]ver clothes and under" to sexual intercourse on more than one occasion. The defendant would give A.J. money for cooperating.

¶ 13    Other prosecution witnesses included, *inter alia*, a forensic interviewer, a pediatrician and a pediatric nurse practitioner from Cardinal Glennon Children's Hospital in St. Louis, Missouri, Diana Jones, the mother of K.B. and A.J., and three siblings of K.B. and A.J. All of these witnesses corroborated key aspects of K.B. and A.J.'s testimonies, and particularly K.B.'s.

¶ 14    The jury found the defendant guilty on all 10 counts, *i.e.*, on all 9 counts of predatory criminal sexual assault of a child, and on the 1 count of indecent solicitation of a child. More information on the defendant's second trial will be presented as necessary for the disposition of this appeal.

¶ 15    After the second trial, the defendant promptly filed a posttrial motion. He claimed, *inter alia*, that he was not proved guilty of the charges beyond a reasonable doubt, and that the circuit

4

court had erred in refusing to give the jury a limiting instruction that his trial counsel had proposed. The circuit court denied the motion.

¶ 16                                  *Sentencing*

¶ 17     The court then held a sentencing hearing on the 11 counts of which the defendant had been found guilty at the two jury trials. For each of the nine counts of predatory criminal sexual assault of a child, the court sentenced the defendant to imprisonment for 15 years; for aggravated criminal sexual abuse, 5 years; and for indecent solicitation of a child, 5 years. All nine sentences for predatory criminal sexual assault of a child were made consecutive to one another and also to the two five-year sentences, which were made concurrent with one another. The aggregate prison sentence was 140 years. The prison terms would be followed by mandatory supervised release for three years to natural life.

¶ 18     The defendant filed a motion to reconsider sentence, claiming that the court had abused its discretion through excessive sentencing. The motion was denied. The defendant filed a timely notice of appeal, and the circuit court appointed OSAD to represent him in the direct appeal.

¶ 19                         *Appeal From Judgment of Conviction*

¶ 20     On direct appeal, the defendant argued only that the trial judge had committed reversible error when he, during *voir dire*, made comments about the concept of reasonable doubt. This court rejected his argument and affirmed the judgment of conviction. *People v. Coleman*, 2019 IL App (5th) 160063-U.

¶ 21            *Postconviction Proceedings: The Subject of the Instant Appeal*

¶ 22     In February 2020, the defendant filed a *pro se* petition for postconviction relief. He claimed that his trial counsel had provided constitutionally ineffective assistance by failing to call four witnesses—T.B., K.C., K.I., and R.H.—at his second trial. According to the defendant, T.B.

5

had offered "favorable testimony" at his first trial, trial counsel was aware of that earlier testimony, and the defendant asked counsel to call T.B. at his second trial, but counsel failed to do so. K.C., according to the defendant, also gave "favorable testimony" at his first trial, but counsel did not call her at the second trial, either. K.I. and R.H., the defendant alleged, had lived with him for years when they were underage girls, and the defendant never sexually abused either one of them, and counsel should have interviewed and called them as witnesses at trial but failed to do so, even though their testimonies would have countered the State's narrative that the defendant sexually abused girls in his care. (More on the defendant's claim and allegations will be presented, as needed to decide this appeal, *infra.*) The defendant stated that T.B.'s and K.C.'s testimonies were included in the transcript of the first trial. He also stated that he did not attach affidavits from K.I. and R.H. because he had been "unable to locate" K.I. and R.H.

¶ 23    On March 20, 2020, the circuit court entered an order summarily dismissing the defendant's postconviction petition. According to the court, the ineffective-assistance argument that the defendant presented in his petition could have been presented during the direct appeal, and since it was not presented on direct appeal, the argument was "waived."

¶ 24    The defendant perfected an appeal from the dismissal order, and the circuit court appointed OSAD to represent him on appeal.

¶ 25                                    ANALYSIS

¶ 26    This appeal is from an order summarily dismissing the defendant's *pro se* postconviction petition. The summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). It can be affirmed on any basis supported by the record. *People v. Durr*, 215 Ill. 2d 283, 296 (2005).

6

¶ 27    As previously noted, the defendant's appointed appellate attorney, OSAD, has concluded that this appeal lacks merit, and on that basis, it has filed a *Finley* motion to withdraw and a supporting legal memorandum. In the legal memorandum, OSAD presents two potential issues that could be raised in this appeal: (1) whether the defendant, in his postconviction petition, stated the gist of a constitutional claim, and (2) whether the circuit court "violated the procedure" for the summary dismissal of a postconviction petition. The defendant has not filed a written response to OSAD's *Finley* motion. This court agrees with OSAD's assessment of this appeal.

¶ 28    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a method by which any person imprisoned in the penitentiary may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. *Id.* § 122-1(a)(1); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a proceeding under the Act by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2020). "The petition shall *** clearly set forth the respects in which [the defendant's] constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2. The Act requires the circuit court to examine a defendant's postconviction petition, and enter an order thereon, within 90 days after the petition is filed and docketed. *Id.* § 122-2.1(a). A circuit court needs to determine within the 90-day timeframe whether it should summarily dismiss the defendant's petition as frivolous or patently without merit (*id.* § 122-2.1(a)(2)) or should order the petition to be docketed for further consideration (see *id.* § 122-2.1(b)). The court must make that determination independently, without any additional input from the defendant, and with no input from the State. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

7

¶ 29 A *pro se* postconviction petition may be dismissed as frivolous or patently without merit only if its allegations, taken as true and liberally construed, fail to state the gist of a constitutional claim. *Id.* In other words, the petition may be dismissed "only if [it] has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). In order to meet the "gist" standard, a defendant " 'need only present a limited amount of detail' " in his petition, and he need not make legal arguments or cite to legal authority. *People v. Delton*, 227 Ill. 2d 247, 254 (2008) (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). "However a 'limited amount of detail' does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *Id.* The pleading requirements for a *pro se* petition certainly are low, but they are real, and they must be met if the petition is to avoid summary dismissal. See *Hodges*, 234 Ill. 2d at 9.

¶ 30 In its *Finley* memorandum, the first potential issue raised by OSAD is whether the defendant, in his postconviction petition, stated the gist of a constitutional claim. In his petition, the defendant's sole claim was that his trial counsel was constitutionally ineffective for failing to call four witnesses—T.B., K.C., K.I., and R.H.—at his second trial. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's assistance was deficient, *i.e.*, that counsel committed errors that "fell below an objective standard of reasonableness," and (2) that he was deprived of a fair trial, *i.e.*, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Albanese*,

8

104 Ill. 2d 504, 526-27 (1984). Both prongs of the *Strickland* test—deficient performance and prejudice—must be satisfied in order to establish ineffective assistance. *Strickland*, 466 U.S. at 687. A failure to satisfy either prong will be fatal to a defendant's claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

¶ 31    In its analysis, this court will first examine the ineffectiveness claim as it relates to T.B. and K.C. (Later, this court will address the ineffectiveness claim as it relates to K.I. and R.H.) T.B. and K.C. were called as witnesses at the defendant's first trial, which was held a few months before his second trial. The defendant alleged that both girls had provided "favorable testimony" about him. Here follows a brief review of T.B. and K.C.'s allegedly "favorable testimony."

¶ 32    T.B. testified as the complainant in count 11, indecent solicitation of a child, the count on which the court directed a verdict of not guilty during the first trial. T.B. testified that she was born on August 9, 2001, and thus was 13 at the time of the first trial. She was a cousin of K.B., A.J., and their siblings. She did not reside with them. T.B. testified that approximately 16 months before (the first) trial, the defendant had asked her whether she was "a virgin," whether she wanted to smoke or drink, and whether she had "naked pictures" on her phone, questions that caused T.B. to feel "[n]ervous, scared." A bit later, the defendant asked T.B. whether she preferred "boys or old men."

¶ 33    K.C., age 10, testified as a corroborating witness at the defendant's first trial. K.C. was another cousin of complainants K.B. and A.J. She did not reside with her cousins. K.C. testified that K.B. had told her that the defendant used to wake her in the middle of the night and take her to the living room. According to K.C., K.B. did not say what happened in the living room, but K.B. did say that when she awoke, "sticky stuff" would be "on her pants." K.C. also testified that K.B. said that the defendant had placed his hand on K.B.'s "[k]itty cat." According to K.C., K.B.

9

said that she did not tell anybody about this activity earlier "because he said that he would beat her if she did."

¶ 34 Nothing in T.B.'s or K.C.'s testimonies can be considered "favorable" to the defendant. T.B.'s recounting of the defendant's words to her made him sound like a louche and lecherous character, and K.C. would have provided additional corroboration to K.B.'s testimony about sexual abuse. To say the least, there is no reason to imagine that the defendant would have gained anything by calling T.B. or K.C. to testify at his second trial. The *Strickland* standard has not been met in regard to the defendant's ineffectiveness claim regarding T.B. and K.C. Trial counsel's decision not to call T.B. and K.C. at the second trial surely constitutes sound trial strategy. See *People v. Enis*, 194 Ill. 2d 361, 378 (2000) (the decision to call a particular witness is a matter of trial strategy, reserved to counsel, and there is a strong presumption that counsel's decision resulted from sound trial strategy, not incompetence).

¶ 35 In his postconviction petition, the defendant stated that Diana Jones, the mother of complainants K.B. and A.J., had testified at trial that K.C. was present at a family meeting that Jones held in order to determine whether sexual abuse had occurred, and the defendant implied that K.C. would testify in a manner that would undermine the State's case. However, Diana Jones never testified—at either of the defendant's trials—that K.C. was present when she discussed sexual abuse with her children. Therefore, the premise of the defendant's allegation is undermined from the start.

¶ 36 The defendant also claimed in his postconviction petition that trial counsel was ineffective for not calling K.I. and R.H. to testify at his second trial. According to the defendant's petition, K.I. and R.H. had lived with the defendant for periods of years when they were underage girls; the defendant had never sexually abused or solicited either one of them; and counsel should have

10

interviewed and called them as trial witnesses but failed to do so, even though their testimonies would have countered the State's narrative that the defendant sexually abused girls who were in his care. This postconviction claim was not supported by an affidavit from either K.I. or R.H. This court notes that the defendant did not explain who exactly K.I. and R.H. were, or how exactly he related to them. This court also notes that the defendant did not explain what exactly he had done to locate K.I. and R.H. for affidavits; he merely stated that he had been "unable to locate" the two of them. This failure to attach supporting documents, or to explain their absence, justifies the summary dismissal of a postconviction petition. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 37   Furthermore, this court cannot imagine how the testimonies of K.I. and R.H., as anticipated and described by the defendant's petition, would have made any difference to the trial's outcome. The State's case against the defendant was very sound. K.B. and A.J., the complainants, testified in great detail, and their testimony was abundantly corroborated by family members and professionals. Nothing in K.I. and R.H.'s anticipated testimony would have changed any of that.

¶ 38   The second potential issue raised by OSAD in its *Finley* memorandum is the issue of whether the circuit court "violated the procedure" for the summary dismissal of a postconviction petition. The defendant filed his petition on February 26, 2020, and the court summarily dismissed it on March 20, 2020. Thus, summary dismissal occurred well within the 90-day timeframe for the entry of an order. See 725 ILCS 5/122-2.1(a) (West 2020). The record on appeal does not give any indication that the court made its determination in any manner except independently. There is no indication that the court solicited or accepted any input from the State. See *Edwards*, 197 Ill. 2d at 244. Accordingly, there is no indication that the court "violated the procedure" in dismissing the defendant's petition.

11

¶ 39                        CONCLUSION

¶ 40    In his postconviction petition, the defendant failed to state the gist of a constitutional claim of ineffective assistance of trial counsel. The circuit court summarily dismissed the petition, in full compliance with the postconviction procedures. No argument to the contrary would have any merit. Therefore, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.


¶ 41    Motion granted; judgment affirmed.